IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ANTONIO CHAVEZ,

      **Plaintiff,**

vs.                                                                                                 No.  00cv0071 JP/JHG

**KENNETH S. APFEL,**
**COMMISSIONER OF SOCIAL SECURITY,**

      **Defendant.**

## MAGISTRATE JUDGE'S PROPOSED FINDINGS
## AND RECOMMENDED DISPOSITION

      This matter is before the Court on Plaintiff's (Chavez') Motion to Reverse or Remand Administrative Decision, filed September 20, 2000.  The Commissioner of Social Security issued a final decision denying Chavez' application for supplemental security income.  The United States Magistrate Judge, having considered the arguments, pleadings, administrative record, relevant law, and being otherwise fully informed, finds the motion to remand is not well taken and recommends that it be DENIED.

      Chavez, now forty-two years old, filed his application for supplemental security income on September 29, 1995, alleging disability since April, 1981, due to a head injury and severe headaches.  He has a high school education and has no past relevant work history.  The Commissioner denied Chavez' application for supplemental security income both initially and on reconsideration.  On November 19, 1997, the Commissioner's Administrative Law Judge (ALJ) denied benefits, finding Chavez had a severe cognitive disorder but did not have any disorder or combination of disorders meeting or equaling in severity any of the disorders described in the

Listing of Impairments, Subpart P, Appendix 1.  The ALJ also found Chavez' subjective complaints were not supported by the medical evidence to the extent he alleged.  The ALJ further found Chavez retained the residual functional capacity (RFC) to perform the nonexertional requirements of unskilled work requiring only simple instructions and found no exertional limitations.  Chavez filed a Request for Review of the decision by the Appeals Council.  On November 19, 1999, the Appeals Council denied Chavez' request for review of the ALJ's decision.  Hence, the decision of the ALJ became the final decision of the Commissioner for judicial review purposes.  Chavez seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether he applied correct legal standards. *Hamilton v. Secretary of Health and Human Services,* 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994).

In order to qualify for disability insurance benefits or supplemental security income, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity. *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993)(citing 42 U.S.C. §423(d)(1)(A)).  The regulations of the Social Security Administration require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications.  20 C.F.R. § 404.1520 (a-f).  The sequential evaluation process ends if, at any step, the

Commissioner finds the claimant is not disabled.  *Thompson v. Sullivan*, 987 F.2d at 1487.

At the first four levels of the sequential evaluation process, the claimant must show he is not engaged in substantial gainful employment, he has an impairment or combination of impairments severe enough to limit his ability to do basic work activities, and his impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1, or he is unable to perform work he had done in the past. 20 C.F.R. §§ 404.1520 and 416.920.  At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show the claimant is able to perform other substantial gainful activity considering his residual functional capacity, age, education, and prior work experience. *Id.*

In support of his motion to reverse or remand, Chavez makes the following arguments: (1) the ALJ's RFC finding is contrary to the evidence and the law; and (2) the ALJ's failure to include Chavez' IQ score in questions to the vocational expert requires remand.

Chavez contends the ALJ's RFC Finding is contrary to the evidence and the law because (1) he relied on Dr. Gabaldon's mental residual functional capacity assessment (mental RFC) rather than have Dr. Kerrigan, the psychologist who performed the consultative psychological examination, complete one; and (2) he failed to order a neurological examination.  Dr. Gabaldon is the non-examining DDS staff psychologist. Chavez claims "There is a disturbing appearance the DDS manufactured evidence at the reconsideration stage to support its initial denial.  Linda Thronson, the DDS disability examiner, looked for a staff doctor to complete the RFC form in a way that would support the decision she had already made to deny this SSI claim."  Pl.'s Mem. in Supp. at 6 (citing to Tr. 40).  Chavez further argues he was deprived of his right to arrange his own neurological evaluation when he relied on the ALJ's representation that he would order one.

3

The ALJ relied on the following evidence to support his RFC and his finding of nondisability.

On January 26, 1996, Dr. Ashdown performed a consultative physical examination on Chavez and opined that Chavez was "severely impaired to do work related activity, due mainly to his significant cognitive impairments, memory loss and to a lesser degree his frequent intractable headaches." Tr. 77-78. However, Dr. Ashdown's objective findings on physical examination indicated Chavez had no abnormalities that would account for Chavez' subjective complaints. In fact, Chavez' physical examination was unremarkable.

Chavez reported to Dr. Ashdown (1) a fifteen year history of memory loss which he attributed to a head injury he sustained in 1981; (2) persistent right arm numbness and paresthesia in his right calf and right flank; (3) loss of strength in his right arm; (4) recurrent spasm in his posterior neck; (5) bizarre noises in his head which sounded like rain on a roof with soft touch of his posterior cervical muscles; and (6) daily exquisite headaches. Chavez also reported to Dr. Ashdown that he had required neurosurgery for his 1981 head injury which required follow-up visits with the neurosurgeon, but denied long-term medical attention. Chavez also reported that Tylenol was the only medication he took. *Id.*

On June 24, 1996, Dr. Kerrigan performed a psychological evaluation on Chavez. Tr. 83-86. Dr. Kerrigan relied on Dr. Ashdown's report. Chavez reported having "excruciating headaches which made it impossible for him to concentrate and remember things." Tr. 83. Dr. Kerrigan reported Chavez was appropriately groomed, cooperative, and responded appropriately to questions. Tr. 84. Although Dr. Kerrigan reported Chavez offered minimal spontaneous information and was "quite blunted and appeared in pain," he reported there was no evidence of

formal thought disorder or impairment in judgment or cognitive processing.  *Id.*   Dr. Kerrigan also found Chavez was oriented to person, place, and time and appeared intact.  *Id.*   Chavez scored a Full Scale IQ of 68 which falls in the range of mild mental retardation.  However, Dr. Kerrigan termed this diagnosis "provisional" due to Chavez complaining of a severe headache during the time Dr. Kerrigan administered the tests.  Tr. 85.   Dr. Kerrigan recommended Chavez be referred for a neurological workup and a neuropsychological assessment to assess the extent of Chavez' cognitive deficits.  Tr. 86.

Pursuant to Dr. Kerrigan's recommendation and post-administrative hearing, the ALJ referred Chavez for a neuropsychological assessment.  On August 20, 1997, Dr. Sachs, a clinical psychologist, evaluated Chavez.  Tr. 107-111.  At that time, Chavez reported having seizures.  Tr. 109.  When Dr. Sachs questioned Chavez as to when he started having seizures, Chavez reported "after I went to see the judge for my Social Security." *Id.*  Chavez also reported having headaches when "he tries to remember or when going to sleep." *Id.*    According to Chavez, Coricidin relieved his headaches.  *Id.*  Dr. Sachs noted a "moderately high level of somatization" and "possible augmentation of his difficulties."  Tr.109, 110.  Intellectually, Dr. Sachs found Chavez functioning slightly higher than at the time Dr. Kerrigan's assessment.  *Id.*  Although Dr. Sachs found "a variety of impairment," such as major difficulties with respect to concentration, because of inconsistencies in testing, Dr. Sachs recommended administering the Personality Assessment Inventory (PAI) as a means of assessing for possible malingering.  Tr. 111. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00 (D) ("Narrative reports of intellectual assessment should include a discussion of whether or not obtained IQ scores are considered valid and consistent with the individual's developmental history and degree of functional restriction.")  Although Dr. Sachs

attempted several times to have Chavez return for the PAI, Chavez failed to comply with repeated requests for rescheduling.  Tr. 112.

Other factors the ALJ considered were (1) no evidence of physical impairments; (2) lack of medical treatment since 1981; (3) Coricidin and Tylenol relieved the headaches; (4) Chavez ability to do yard work, clean house, do his laundry, and cook; (5) inconsistencies in describing his headaches; and (6) inconsistencies in Chavez' alleged work history.

"'To be disabling, pain must be so severe, by itself or in conjunction with other impairments, as to preclude any substantial gainful employment.'" *Brown v. Bowen*, 801 F.2d 361, 362-63 (10th Cir. 1986)(quoting *Dumas v. Schweker,* 712 F.2d 11545, 1552 (2d Cir. 1983)). Moreover, "a claimant's subjective complaint of pain is by itself insufficient to establish disability." *See Talley v. Sullivan*, 908 F.2d 585, 586 (10th Cir. 1990).  In determining whether Chavez' pain was disabling, the ALJ correctly examined the medical record and evaluated Chavez' credibility. *Id.*

In this case, Dr. Ashdown relied on Chavez' complaints of severe headaches and alleged fifteen year history of memory loss which Chavez attributed to his 1981 head injury.  Dr. Kerrigan relied on Dr. Ashdown's report and the information elicited from Chavez.  Additionally, Dr. Kerrigan questioned the validity of Chavez' IQ score and recommended further testing.  Dr. Sachs also administered a battery of tests, questioned the results and suspected malingering. Based on the record as a whole, the Court finds that substantial evidence supports the  ALJ's RFC finding.  The Court further finds that the ALJ did not err in not ordering a neurological examination.  Since Dr. Sachs suspected Chavez of possible malingering, a neurological examination may have been in order depending on the outcome of the PAI.   However, because

Chavez failed to submit to the PAI, it was within the ALJ's discretion not to order the neurological examination. *See Diaz v. Secretary of Health & Human Servs.,* 898 F.2d 774, 78 (10th Cir. 1990)(Secretary has broad latitude in ordering consultative examinations). Finally, it is obvious from the record that Dr. Gabaldon relied on Dr. Kerrigan's psychological report to complete the mental RFC and PRT form, which was appropriate. Tr. 87-89.

Chavez also contends a remand is required because the ALJ failed to include his IQ in questions to the vocational expert (VE). The transcript of the administrative hearing indicates the ALJ referred the VE to Exhibit 16 which contained Chavez' IQ score. Tr. 142. Additionally, the ALJ asked the VE if she had reviewed the file before he presented her with his hypothetical questions. Tr. 141. The VE responded that she had reviewed the file. Finally, the VE was present throughout the administrative hearing and heard Chavez' testimony regarding his impairments. Therefore, although Chavez' IQ score was suspect, there is no evidence the VE did not consider Chavez' IQ score when testifying in response to the ALJ's hypothetical question.

## RECOMMENDED DISPOSITION

The ALJ applied correct legal standards and his decision is supported by substantial evidence. Chavez' Motion to Reverse or Remand Administrative decision, filed September 20, 2000, should be denied.

JOE H. GALVAN
UNITED STATES MAGISTRATE JUDGE

## **NOTICE**

Within ten days after a party is served with a copy of these proposed findings and recommended disposition that party may, pursuant to 28 U.S.C. § 636 (b)(1), file written objections to such proposed findings and recommended disposition. A party must file any objections within the ten day period allowed if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.